GEORGE G. WILLIAMS et al., Trustees under the Will of MARY MASON JONES, Deceased, Plaintiffs, *v.* CATHARINE L. O'CONOR JONES and MARY DE TROBRIAND, Respondents, and ALICE ISELIN et al., Appellants, Impleaded with Others.

1. WILL — WHEN CONTINUANCE OF TRUST NOT DEPENDENT UPON ORDER OF DEATH OF OTHER CESTUIS QUE TRUSTENT. The continued trust in the income of one-half of certain real property in favor of a wife under a will providing therefor on the death of her husband, leaving "him surviving his wife" and "his son," is not defeated by the death of such son prior to that of her husband, where the will clearly intended to provide for her as long as she lived, or until her remarriage, and not to make the provision dependent upon the order of the death of the father and son.

2. WHEN FEE PASSES ALTHOUGH CONTINGENCY NOT ANTICIPATED BY THE TERMS OF THE WILL. The failure of a will to provide for the disposition of the fee of trust property on the death of *cestuis que trustent* in a certain order, which was not anticipated by the terms of the will, does not effect a termination of the trust and cause the fee to fall into and become a part of the residuary estate where it is clear from a consideration of all the provisions of the will and the circumstances that the testatrix intended the fee to pass to persons named, conditioned solely upon the death of the *cestuis que trustent*, and of one of them without issue, and not upon the order in which they might die.

3. REMAINDER IN FEE — CONDITIONAL LIMITATION. A remainder over in fee, limited to take effect solely upon the failure of issue of a *cestui que trust* of one of independent precedent trusts for life in the income of the property, does not fail, because on account of his death before one of the other *cestuis que trustent*, a contingency not specially provided for in the will, such precedent estate does not take effect but vests upon the death of such *cestui que trust*, without issue, subject to remaining life estates in the property, since a conditional limitation and not a preceding condition is thereby created.

*Williams* v. *Jones*, 54 App. Div. 349, reversed.

(Argued February 28, 1901; decided April 16, 1901.)

APPEAL from a final judgment of the Supreme Court, entered November 23, 1901, upon an order of the Appellate Division in the first judicial department, affirming an interlocutory judgment of Special Term construing the will of Mary Mason Jones, deceased.

The purpose of the action was to obtain a construction of the ninth clause of the testatrix's will. It was alleged in the complaint that she did not specifically direct what disposition should be made of the property mentioned in that clause in case Mason R. Jones should die leaving his wife but not his son Renshaw M. Jones surviving.

The defendant Catharine Louise O'Conor Jones, mentioned in the will as Louise O'Conor Jones, and Mary de Trobriand allege that Renshaw having died before his father, and the latter having died leaving his wife surviving, the trust attempted to be created by the ninth clause terminated, and that they became entitled to receive the principal of the estate described in that clause under the residuary clause of the will which made Mason R. Jones and Mary de Trobriand residuary legatees.

The appellants, who are the children of Mason R. Jones by his first wife and the issue of those who have died, allege in substance that under the ninth clause of the will, upon his death, they became entitled in fee to an undivided one-half of the estate mentioned therein. They also claim that the title to the remaining one-half is vested in the plaintiffs as trustees for the benefit of Louise O'Conor Jones during her life or widowhood, and that when she either dies or remarries the title will vest absolutely in them.

By the ninth clause of her will, the testatrix gave and devised to George G. Williams, Woodbury G. Langdon and George B. Post and their successors as trustees, certain real property therein mentioned and described, to hold the same as trustees in trust during the natural life of her son Mason R. Jones, to receive the rents, issues, income and profits thereof, to apply one equal half part thereof to the use of said Mason during his natural life, and to apply the other equal half part of the net rents, issues, income and profits thereof to the use of Louise O'Conor Jones, the wife of her son Mason, for so long during the natural life of her said son as she should live, and if she should die before her son, then from and after her death to apply such last-mentioned one equal half part of such income

to the use of her said son during the remainder of his natural life, and from and after the death of her said son if he should leave him surviving his wife Louise and their son Renshaw, to continue to hold one equal undivided half of the property mentioned and described in that clause of the will until the death or remarriage of the said Louise, upon a further separate trust to receive the income thereof and apply it to the use of said Louise until her death or remarriage, and upon her death or remarriage, whichever should happen first, to convey, transfer and deliver the said one equal undivided half part of the property mentioned in fee simple to Renshaw M. Jones if he be then living, or to his issue if he should previously have died leaving issue then surviving; but if her grandson Renshaw should have died before the death or remarriage of Louise, without leaving issue who were living at the time of her death or remarriage, then upon her death or remarriage, to convey, transfer or deliver the said one equal undivided half part of such property in fee simple to the children then living of her son Mason by his wife Lydia Beekman Jones, and the issue then living of any child or children of his by his said wife Lydia, who should have previously died, in equal shares, *per stirpes* and not *per capita*, the issue of such deceased child to take only the share which the parent of such issue would have taken if living, and from and after the death of her son Mason, if he should leave him surviving his wife Louise and his son Renshaw, to continue to hold the other one equal undivided half during the natural life of the said Renshaw upon a further separate trust to receive the income and apply the net income to the use of said Renshaw during his natural life, and upon the death of Renshaw leaving lawful issue, to convey and deliver the said one equal undivided half in fee simple to such issue in equal shares, or if he should leave no lawful issue him surviving, then upon his death to convey and deliver the last-mentioned one-half in fee simple to the children then living of Mason and Lydia and the issue then living of any child or children of his by his said wife Lydia, who should have previously died, in equal shares ; but

if her said son Mason should survive the said Louise and at his death should leave him surviving his said son Renshaw, then to continue to hold the whole of said property mentioned in the ninth article of her will from and after the death of her son in trust during the natural life of said Renshaw, to receive the income and apply the same to the use of said Renshaw during his natural life, and upon the death of said Renshaw leaving issue, to convey and transfer the whole in fee simple to such issue in equal shares, or if he should leave no lawful issue, then to convey and deliver the same in fee simple to the children then living of her son Mason by his first wife Lydia, and the issue then living of any child or children of his by his said wife, who should have previously died in equal shares, the issue of any such deceased child to take only the share which the parent of such issue would have taken if living, and if at the time of the death of said Mason, Louise should have died and Renshaw should also have died, but leaving issue who survived her (the testator) said son, then upon the death of her said son, to transfer and deliver the whole of said property in fee simple to such issue in equal shares, and if before the death of her said son, the said Louise should have died and the said Renshaw should also have died leaving no issue surviving her said son Mason, then and in such case upon the death of her said son she gave and devised the whole of the property mentioned in fee simple to the children then living of her son Mason by his wife Lydia, and the issue then living of any child or children of his by his said wife Lydia, who should have previously died, in equal shares, the issue of any such deceased child to take only the share which the parent of such issue would have taken if living.

The testatrix died May 28, 1891, leaving her surviving Mason R. Jones, her son, and Mary de Trobriand, a daughter. The son was twice married and had two children by his first wife, who were living at the death of the testatrix. He had a son, Arthur Mason Jones, who predeceased his father, leaving issue. Mason R. Jones also had a son by his second wife, Renshaw Mason Jones. These persons were all, except

Arthur, living at the death of the testatrix. In November, 1894, Renshaw died unmarried and without issue, his father and mother surviving him. In February, 1899, Mason died, leaving him surviving Louise, several children by his first wife, and the issue of those who had previously died.

The Special Term reached the conclusion that by the death of Renshaw before the death of either his father or mother, the fee of the property mentioned in the ninth clause was undisposed of by that clause and became a part of the residuary estate, and that the title passed under the residuary clause, one-half to Mary de Trobriand and the remainder to Louise as sole legatee under the will of Mason R. Jones, who was the other residuary legatee.

That decision was unanimously affirmed by the Appellate Division which held that the circumstances upon which, under that clause, the children of the first wife of Mason and their issue were to acquire the fee, had not occurred, and, hence, they were not entitled to receive the fee of any of the property devised by that portion of the will. That court seemed to be of the opinion that the will disclosed that it was not the intention of the testatrix that the children of Mason by his first wife should receive any interest in the property, unless Mason died leaving both his wife and Renshaw surviving.

*Charles F. Brown* for Alice Iselin et al., appellants. The court below erred in holding that the remainders depended on the trusts for the lives of Louise O'Conor Jones and Renshaw Mason. (*Norris* v. *Beyea*, 13 N. Y. 287; *Downing* v. *Marshall*, 23 N. Y. 366; *Schettler* v. *Smith*, 41 N. Y. 328; *McLean* v. *Freeman*, 70 N. Y. 85; *Crozier* v. *Bray*, 120 N. Y. 367; *Wager* v. *Wager*, 96 N. Y. 164; *Matter of Miller*, 161 N. Y. 71.) The absolute power of alienation is not suspended beyond the statutory limit. (Boll. on Susp. Alien. § 93; *Gilman* v. *Reddington*, 24 N. Y. 13; *Woodgate* v. *Fleet*, 64 N. Y. 566; *Schermerhorn* v. *Cotting*, 131 N. Y. 48; 1 R. S. 724, § 25.) The fee to the whole property was vested in these appellants on the death of testatrix, subject to

any life estates which might be created under the will; subject, also, to be defeated by the birth of issue to Renshaw. (*Moore* v. *Littel*, 41 N. Y. 66; *Sheridan* v. *House*, 4 Keyes, 569; *Nodine* v. *Greenfield*, 7 Paige, 544; *Byrnes* v. *Stilwell*, 103 N. Y. 453; *Smith* v. *Scholtz*, 68 N. Y. 41.) The respondents have failed to connect the condition annexed to the life estates with the disposition of the fee. (*Matter of Brown*, 93 N. Y. 295.) .

*Henry A. Forster* and *John A. Weekes, Jr.*, for Lydia Lawrence Mason Jones et al., appellants. There was a clear and express ulterior devise or a gift over of one-half of the *corpus* of the three lots and buildings thereon, in fee-simple, to the appellants, the children and descendants of deceased children of the testatrix's son by his first wife, to take effect in the event of the death of the testatrix's son Mason R. Jones and of her grandson Renshaw M. Jones, without issue, during the life of Catharine L. O'Conor Jones. (*Ranken* v. *Janes*, 1 App. Div. 272; 2 Jarman on Wills [6th Am. ed.], 1642–1646; 2 Williams on Exrs. [7th Am. ed.] 1134–1137; *Matter of Betty Smith's Trusts*, L. R. [1 Eq. Cas.] 79; *Mackinnon* v. *Sewell*, 2 M. & K. 202, 214, 215; *McLean* v. *Freeman*, 70 N.Y. 85; *Lenox* v. *Lenox*, 10 Simons, 400.) There was an ulterior devise or a gift over of the other half of the three lots and buildings thereon, in fee simple, to the appellants, the children and descendants of deceased children of the testatrix's son by his first wife, to take effect upon the termination of the successive life estates in favor of Mason R. Jones and of Renshaw M. Jones in the rents thereof, in the event that Renshaw M. Jones died without issue. When the second life tenant died, without issue, during the lifetime of the first, this limitation over was thereby accelerated, and the appellants became entitled to the other half of the property in fee simple and to the rents thereof, upon the termination of the life estate by the death of the first life tenant. (13 Am. & Eng. Ency. of Law, 31; Fowler's Real Prop. Law, 148; *McLean* v. *Freeman*, 70 N. Y. 81; *Wager* v. *Wager*, 96 N. Y. 164.)

*Henry H. Snedeker,* guardian ad litem, for William O'Donnell Iselin et al., infants, appellants. The testatrix intended to devise the property described in the 9th clause of the will to her son, Mason R. Jones, his wife and his issue. (*Hoppock* v. *Tucker,* 59 N. Y. 202; Schouler on Wills, § 462; *Phillips* v. *Davies,* 92 N. Y. 199; *Tilden* v. *Green,* 130 N. Y. 29; *Chrystie* v. *Phyfe,* 19 N. Y. 344.) Technical rules in the construction of wills are not to be followed. (*Clarke* v. *Boorman,* 18 Wall. 493; *Lytle* v. *Beveridge,* 58 N. Y. 592; *Ritch* v. *Hawxhurst,* 114 N. Y. 512.) The defeasance of one or more of the primary gifts constitutes no hindrance to the gift over. (*Norris* v. *Beyea,* 13 N. Y. 373; *McLean* v. *Freeman,* 70 N. Y. 83.) A portion of the 9th clause of the will is parenthetical. (*Starr* v. *Starr,* 132 N. Y. 154; *Tilden* v. *Green,* 130 N. Y. 29; *Phillips* v. *Davies,* 92 N. Y. 199; *Roe* v. *Vingut,* 117 N. Y. 216; *Du Bois* v. *Ray,* 35 N. Y. 162.)

*Michael H. Cardozo* and *Raymond Reubenstein* for Catharine L. O'Conor Jones, respondent. By the express terms of the will a fee is not given to the trustees, but a mere estate for the life of Mason, and a devise to trustees vests no estate, except for the purposes of the trusts. (*Manice* v. *Manice,* 43 N. Y. 303; *Embury* v. *Sheldon,* 68 N. Y. 227; *Matter of Seebeck,* 140 N. Y. 241.) The devises over to Renshaw M. Jones and his issue, and to the issue of Mason R. Jones by his first wife, were not conditional limitations, but were contingent remainders dependent, respectively, upon the occurrence of the specific contingencies expressed in the 9th article, upon which the designated trusts were to arise. There is no unconditional, absolute, independent devise or substituted gift to such issue. (*Schettler* v. *Smith,* 41 N. Y. 328; *Clark* v. *Cammann,* 160 N. Y. 315; *Matter of Baer,* 147 N. Y. 348; *Matter of Allen,* 151 N. Y. 243; *McGillis* v. *McGillis,* 154 N. Y. 532; *Dana* v. *Murray,* 122 N. Y. 604; *Cox* v. *Wisner,* 43 App. Div. 591; *Dicken* v. *Clarke,* 2 Y. & C. Exch. 572; *Underwood* v. *Wing,* 4 De G., M. & G. 633; *Parsons*

v. *Parsons*, 5 Ves. 578.) The residuary devisees, Mason R. Jones and Mary de Trobriand, took a vested alienable interest in the real estate devised by the 9th article of the will, at the date of the death of the testatrix, subject to the trust and conditions therein created. (*Matter of Tienken*, 131 N. Y. 391; *Doane* v. *M. T. Co.*, 160 N. Y. 495; *Clark* v. *Cammann*, 160 N. Y. 315; *Matter of Tompkins*, 154 N. Y. 634; *Floyd* v. *Carow*, 88 N. Y. 560; *Embury* v. *Sheldon*, 68 N. Y. 227; *Matter of Allen*, 151 N. Y. 243; *Matter of Gardner*, 140 N. Y. 122; *Goebel* v. *Wolf*, 113 N. Y. 405.) In the construction of wills some force or meaning must, if possible, be given to every word used by the testator. (*Trustees T. Seminary* v. *Kellogg*, 16 N. Y. 88; *Roseboom* v. *Roseboom*, 81 N. Y. 359; *Van Nostrand* v. *Moore*, 52 N. Y. 12; *Taggart* v. *Murray*, 53 N. Y. 233; *Jenkins* v. *Van Schaack*, 3 Paige, 243; *Damuth* v. *Lee*, 163 N. Y. 478.) This is not a case where the court should change, supply, transpose or omit words in the 9th article to effectuate any supposed intention of the testatrix. (*Sins* v. *Doughty*, 5 Ves. 247; *Coates* v. *Hart*, 32 Beav. 349; *Malden* v. *Maine*, 2 Jur. [N. S.] 206; *Matter of Sanders*, L. R. [1 Eq.] 675; *Malcolm* v. *Taylor*, 2 Russ. & M. 416; *Malcolm* v. *Malcolm*, 21 Beav. 225; *Barker* v. *Young*, 33 Beav. 353; *Matter of Kirkbride*, L. R. [2 Eq.] 400; *Day* v. *Day*, 1 Kay, 703; *Mortimer* v. *Hartley*, 6 Exch. 47; Theobald on Wills [4th ed.], 620.) The children of the first wife of Mason R. Jones are not entitled to an estate in fee by implication, but, if they are so entitled, it must be subject to an implied trust for Louise of the income of the entire trust property for life. (*Van Kleeck* v. *Ministers, etc., R. Dutch Church*, 6 Paige, 600; *Post* v. *Hover*, 33 N. Y. 593; *Matter of Vowers*, 113 N. Y. 569; *Lynes* v. *Townsend*, 33 N. Y. 558; *Bunyan* v. *Pearson*, 8 App. Div. 84; *Macy* v. *Sawyer*, 66 How. Pr. 381; *Rathbone* v. *Dyckman*, 3 Paige, 9; *Wilkenson* v. *Adams*, 1 Ves. & Bea. 466; *Chapman* v. *Brown*, 3 Burr, 1634; *Augustus* v. *Seabolt*, 3 Metc. [Ky.] 155.) The power of sale in the 13th article expired with the death of Mason R. Jones,

as said event terminated the trust state. (*Cussack* v. *Tweddy*, 126 N. Y. 81.)

*Howard C. Tracy* for Mary de Trobriand, respondent. The estates created by the 9th clause of the will to take effect immediately upon the death of Mason R. Jones, under the different sets of circumstances particularly specified, are contingent remainders, and not conditional limitations, and the estates subsequently created to take effect upon the expiration of such of said estates as are for life only are simply additional remainders in the alternative, and not substituted or independent gifts. (Fearne on Rem. 11; 1 Jarman on Wills [6th ed.], 788.) None of the contingencies having occurred upon the happening of which depended the taking effect of any one of the several contingent remainders created immediately after the death of Mason R. Jones, and it being, therefore, impossible that any one of such contingent remainders should take effect, the ulterior remainders which were expectant upon the termination of such contingent remainders failed with them, the result being that the trust estate, upon the death of Mason R. Jones under the circumstances which have happened, is undisposed of by the 9th clause of the will. (29 Am. & Eng. Ency. of Law [1st ed.], 445; 1 Jarman on Wills [6th ed.], 778; *Denn* v. *Bagshaw*, 6 T. R. 512; *Holmes* v. *Cradock*, 3 Ves. 317; *Parsons* v. *Parsons*, 5 Ves. 578; *Shuldam* v. *Smith*, 6 Dow. 22; *Maddison* v. *Chapman*, 4 K. & J. 709.) If the ulterior limitations are immediately consecutive on the termination of a particular contingent estate in unbroken continuity, and no intent or purpose is expressed with reference to that estate in contradistinction to the others, the whole will be construed to hinge upon the same contingency. (29 Am. & Eng. Ency. of Law [1st ed.], 465; 1 Jarman on Wills [6th ed.], *778; Fearne on Rem. 236; *Gray* v. *Golding*, 6 Jur. [N. S.], 474; *Catley* v. *Vincent*, 15 Beav. 198; *Tolderoy* v. *Colt*, 1 Y. & C. Exch. 621; *Doe* v. *Sh. . . . . . . . .*, 1 Doug. Rep. 75.) The court can ascertain

the intent of the testator only from the will itself, and if such intention cannot be clearly gathered from the language used by the testator, the court cannot introduce language which the testator has not used, nor exclude language which he has used, for the purpose of effectuating what it conjectures was his intention. (*Tilden* v. *Green*, 130 N. Y. 29; *Matter of Huntington*, 6 Cent. Rep. 217; *Towle* v. *Delano*, 144 Mass. 95; *Greenough* v. *Cass*, 64 N. H. 326; *Wright* v. *Denn*, 10 Wheat. 204.)  The principal of the trust estate mentioned in the 9th clause of the will not having been disposed of by that clause after the death of Mason R. Jones under the circumstances which have happened, the principal of said trust estate passes under the residuary clause of the will. (Birdseye's R. S. [2d ed.] 2614, §§ 80, 89; *Hopkins* v. *Kent*, 145 N. Y. 363; *Floyd* v. *Carow*, 88 N. Y. 560; *Riker* v. *Cornwell*, 113 N. Y. 115; *Doane* v. *M. T. Co.*, 160 N. Y. 494; *Clark* v. *Cammann*, 160 N. Y. 315; *Youngs* v. *Youngs*, 45 N. Y. 254; *Morton* v. *Woodbury*, 153 N. Y. 243.)  The power of sale given to the trustees by the 13th clause of the will is at an end, in so far as it affects the principal of the trust estate created by the 9th clause of the will during the life of Mason R. Jones.  (Birdseye's R. S. [2d ed.] 2617, § 89.)

MARTIN, J.  We agree with the learned Appellate Division that the construction of the ninth clause of the testatrix's will is to be determined by her intent if it can be ascertained, and that effect must be given to such intent if it can be done without contravening any settled rule of construction or statute.

The will of the testatrix discloses a mature and complete plan for the disposition of her estate for the benefit of those who were intended as recipients of her bounty.  In its prolixity, resulting from an effort to state in detail every contingency that might by any possibility arise, this controversy doubtless had its origin.  Having attempted to anticipate and provide for every imaginable condition or combination of

circumstances that might in the future exist, it is found that
the draughtsman succeeded in providing, in great detail, for
many possible conditions, but omitted that which actually
occurred.   It is upon that omission that the present litigation
and the decisions of the courts below were based.  If the courts
were justified in disregarding the ninth clause as to the disposi-
tion of the fee of the property, it must be upon the ground
that the testatrix having failed in express terms to provide in
detail for the contingency that occurred, that clause became
ineffective, regardless of her actual intent as disclosed by her
whole will.  If understood, the view of the court below was, that
as the final provision of the ninth clause provided that if both
Louise and Renshaw should die before Mason, the fee was to
go to the issue of Renshaw if he died leaving any ; if not, to .
the appellants ; that the devolution of the fee under that
clause was entirely dependent upon the existence of that
express condition, and as it did not exist that clause became
inoperative and the fee passed into the residuary estate.   The
court seems to have based its decision upon the theory that
the testatrix intended, not that the death of Renshaw without
issue should be the condition or limitation upon which the fee
should pass to the appellants, nor that it should depend upon
the time when he should die, but that the condition upon
which the devise to them in fee should stand was that Ren-
shaw should not die until the death of his father and mother.
It is vastly less difficult to state the position than it is to
understand what possible motive could have induced the tes-
tatrix to base the provisions of that clause as to the fee
upon such a condition, or to believe that she had any intent
to do so.

The intention of the testatrix must be our absolute guide
in construing her will.   Such is the mandate of the statute,
and that principle is so firmly established by the decisions of
this and other courts as to render any citation of authorities
needless.   Another equally well-established canon of inter-
pretation is that that intention is to be ascertained from the
whole will taken together, rather than from any particular

provision considered by itself.  If a general scheme is found
to have been intended, which is valid, it is the duty of the
court to carry it into execution and thus effectuate the pur-
pose of the testatrix.  When the intention is ascertained, the
mode of expression, or an inadvertent omission in some par-
ticular, should be subordinated to the intent without regard
to technical objections if in harmony with the general scheme
and purpose of the will.  The primary effort should be to find
the testatrix's general scheme and carry her purpose into
effect, to which even general rules of interpretation are sub-
servient.  In interpreting this will, the facts and circum-
stances attending its execution must be considered, including
the relation of the parties, the nature and situation of the
property, and the apparent purpose of the will or special gift.
As the extrinsic facts and circumstances are uncontradicted,
it is our duty to interpret this will in the light of the estab-
lished facts, and from the provisions of the whole will to
determine the testatrix's intent, which, under the circum-
stances, is a question of law reviewable by this court.  (*Under-
hill* v. *Vandervoort*, 56 N. Y. 242.)

Although the ninth clause of the will, as well as its other
provisions, is prolix, to an extent involved and somewhat
difficult to at once comprehend, still, a studious examination
of the whole will and especially of the clause under considera-
tion discloses : 1. That the general purpose of the ninth clause
was to provide for Mason R. Jones and his family to the
exclusion of all others ; 2. If it could be accomplished without
conflict with the statute relating to the suspension of the power
of alienation, that Mason R. Jones, his wife and Renshaw
should have only a life use in any portion of the property, the
extent of the interest of each to be dependent upon and con-
trolled by circumstances which involved the death or survi-
vorship of the others; 3. Upon the termination of the lives
of all who were to receive the income or any part thereof,
that the fee should go to the issue of Renshaw if he left issue
surviving, and if not, that it should vest in the children of
Mason R. Jones by his first wife.

Most, if not all, the complications and difficulties which are encountered in interpreting this clause of the will, relate to the income of the property while in the hands of the trustees. Its provisions as to the ultimate disposition of the fee are plain and simple, and become uncertain only when they are sought to be made dependent upon the various provisions as to its life use. The contingencies in that provision of the will may well be held to apply to the income only. As there can be little dispute about the rights of the surviving parties as to the income, we may well separate the provisions relating to the life use from those which relate to the fee, as such a course will greatly simplify the question of the title to the latter.

As with our views of this case it is clear that Louise O'Conor Jones is entitled to one-half of the income of the property until her death or remarriage, the only real question is whether the fee passed under the ninth clause of the testatrix's will, or fell into and became a part of the residuary estate. That she as fully intended by the ninth clause to make an ultimate and final disposition of the fee as she did of the use, there can be no doubt. To attribute to her an intent that in the single instance of the death of Renshaw during the life of his father and mother, the widow should be deprived of the use of her portion of the income and the appellants should not become entitled to the fee for which the testatrix had so carefully and plainly provided, we think unjustifiable. We perceive no substantial basis for the belief that she intended that all her provisions for the widow during her life and for the children of Mason by his first wife, should fail if Renshaw died without issue during the life of his parents. No good reason can be found or hardly imagined upon which the existence of such a purpose could be supposed to have been in the mind of the testatrix. It would be inconsistent with the provisions of this clause and with the general plan and obvious purpose of the whole will.

Independent of the special instance to which we have adverted, as to the fee the ultimate objects of her bounty were the appellants. Only one situation was intended to stand

between them and the fee, which was that Renshaw had issue that should survive his death. We discover nothing to justify the court in finding that whether Renshaw should die before his father or afterwards in any way affected her intention that the fee should go to the appellants if he died without issue. It was the fact of his death childless that was the basis of her intention that they should have the fee, and not the order in which the deaths of those having the income for life should occur.

We are unable to read this will without reaching the conclusion that the testatrix intended that Mason and his wife should each be entitled to one-half of the income of the trust estate during the life of the former; if Louise died before Mason, that he was to receive the whole income during his life; if Mason died before his wife, that she should still be entitled to one-half of such income during her life or widowhood. The testatrix also intended that should Renshaw survive Mason, he should have the use of the other half during his life; upon the death or remarriage of Louise, that, to avoid the statute against perpetuities, he should receive the one-half in fee of which she had the use; if Renshaw died leaving issue, her intent was that such issue should have title in fee to the remaining one-half; but if Renshaw died before the death of his father leaving no issue, then that the fee upon the death of Mason should vest in his children by his first wife, subject only to the use or life estate as to one-half during the life and widowhood of Louise. The clear intent of the testatrix was to vest the fee in the descendants of Mason and not in him. Obviously she did not intend that the fee should vest either in Mason or Mrs. de Trobriand. This is rendered clear by the other provisions of the will when considered in connection with the ninth clause. Therefore, unless the evident intention of the testatrix is to be defeated, the appellants were entitled to one-half of the fee upon the death of Mason, and will be entitled to the remaining one-half in possession upon the death or remarriage of the widow. Hence, in the further discussion of this case, it will be assumed

that under the existing circumstances the testatrix intended that the fee should go to the appellants.

But it is contended by the respondents that the devise of the fee to the children of Mason R. Jones by his first wife was totally dependent upon the death of Mason leaving surviving him both his wife and their son, and as that event did not occur, the trust never took effect as to Renshaw and Louise, and the remainders which were dependent upon it never came into existence. They insist that because the ninth provision of the will failed to specifically provide how the property should be disposed of in the special event of the death of Renshaw without issue during the life of his father and mother, all the provisions of that portion of the will as to the disposition of the income and as to the disposition of the fee as well, were invalid, they being dependent upon the single contingency that both Renshaw and his mother should survive the death of Mason. In other words, their claim is that the remainder to the appellants depended and rested upon trusts for the lives of both Louise and Renshaw, and, as both of those trusts never came into effect because of the death of Renshaw before the death of his father, no matter what may have been the intent of the testatrix, the estate in remainder never came into existence.

There was no failure of the trust for the benefit of Louise. The only failure was of that for the benefit of Renshaw. Although the trust as to the income in favor of Renshaw lapsed or failed in enjoyment by reason of his death during the lifetime of his father and the continuance of the life estate of the latter, yet, as to Louise, the trust was continued, notwithstanding the death of Mason. There is no reason whatever to suppose that the testatrix intended that her provision for Louise should fail in case of the death of Renshaw, as her obvious purpose was to make a separate provision for Louise, a separate one for Renshaw, and that each should enjoy the provision of her bounty, independently of and without regard to the lapse or failure of the other.

A limitation does not fail because the preceding estate does

not take effect. Where a devise is limited to take effect on a
condition annexed to any preceding estate, if the preceding
estate should never arise, the remainder over will, neverthe-
less, take place, the first estate being considered only as a pre-
ceding limitation, and not as a preceding condition, to give
effect to the subsequent limitation. (*Norris* v. *Beyea*, 13 N.
Y. 273, 287.)

Where there was a devise and bequest to the testator's son
of real and personal estate for life, to go to his heirs in case
he died leaving issue, and in case he died without issue to go
to his nephews and nieces, and the son died without issue
before the death of the testator, this court held that there was
no lapse, but that the contingent limitation took effect in favor
of the nephews and nieces. The court said : " There is no
ground for supposing that his (the testator) wishes, in regard
to the ultimate disposition of the property, depended in the
slightest degree on the time when the son should die without
issue," and added, " The primary gift may lapse or fail if its
object dies before the will can operate at all, but this has no
tendency to defeat an independent and ulterior limitation to
other objects who are living at the testator's death." (*Down-
ing* v. *Marshall*, 23 N. Y. 366.)

" An ulterior devise, to take effect upon the defeasance of
a former one, will attach as well where the failure of the
primary devise is by the happening of some event, such as
the death of the devisee, during the lifetime of the testator,
as by an event occurring after his death, by which the first
devise after it has taken effect is defeated, unless the ulterior
devise is so connected with and dependent upon the primary
one that it cannot consistently, with the provisions of the will,
have effect if the latter fails *ab initio*." ( *Wager* v. *Wager*,
96 N. Y. 164, 171; *Vanderzee* v. *Slingerland*, 103 N. Y. 47;
*Crozier* v. *Bray*, 120 N. Y. 366; *Matter of Miller*, 161 N.
Y. 71.)

A condition subsequent followed by a limitation over to a
third person in case the condition is not fulfilled, or there is a
breach of it, is known as a conditional limitation. A condition

68

brings the estate back to the grantor or his heirs. A conditional limitation carries it over to a stranger. A condition terminates an estate; a limitation creates a new one. "A remainder may be limited on a contingency, which, if it happens, will operate to abridge or determine the precedent estate, and every such remainder shall be a conditional limitation." (Real Property Law, § 43.)

The language of the ninth provision of the testatrix's will expressly gave the fee to the appellants, to be defeated only by the contingency of the death of Renshaw leaving issue. If he died without issue the substituted devise to them was intended to take effect. We think there is no ground for supposing that the wishes of the testatrix in that regard were dependent at all upon whether Renshaw died before or after the death of his father. The remainder over to the appellants constituted a conditional limitation and not a preceding condition based upon the fact that both the widow and her son should survive their husband and father. The term "conditional limitation" is here used in its broader sense which includes shifting uses and executory devises and as a phrase limiting an estate previously created and substituting another in its stead. The purpose of the testatrix evidently was, not to terminate the estate in fee given by the ninth clause of the will in the event of the death of Renshaw without issue, whether it occurred during the lifetime of his father or subsequently, but was, in the event of his death without issue, to carry it over to the children of Mason by his first wife. Her intention upon the death of Renshaw was not to terminate the estate in fee, but to create in the appellants a new or substituted one. Consequently, upon the death of Renshaw without issue, the estate in fee vested in the children of Mason by his first wife, subject, however, to the life estate of Mason and the life estates created for the benefit of Louise.

The appellants contend that upon the death of the testatrix, as they were the only persons in being at that time who were entitled to take the fee upon the termination of the precedent estate, the fee to the whole property vested in them subject

to the life estates which were created by the will, and also subject to be defeated by the birth of issue to Renshaw, and that where, as here, there is a future devise to persons named or issue, with a substituted devise in case they die during the precedent estate, the remainder vested as soon as there was any person in being answering that description, subject to let in those, if any, who were after born and subject to be divested as to any who might die during the continuance of the precedent estate. But whether the contention of the appellants can be sustained as broadly as made, we need not now decide, for upon the death of Renshaw the estate vested in the appellants.

The law favors the vesting of estates as soon as possible after the testator's death, and a will in doubtful cases is to be construed accordingly; still, the question is one of intent. (*Stokes* v. *Weston*, 142 N. Y. 433.) Where, after a devise and bequest in language denoting an absolute gift of the whole estate in fee, there is a subsequent limitation over in the event of the first devisee dying under age and without issue, the gifts are not repugnant to each other, and the latter is a valid executory gift. This is illustrated in the following case: The will of S. devised his real estate to his wife for life if she remained unmarried, and upon her death or remarriage he devised it to C., with the provision that in case of the death of the latter without children, the remainder was to go to A., and it was held that upon the death of the testator, C. took a vested remainder in fee, subject to be defeated by his death without children, upon which event the substituted remainder, given upon that contingency to A., would vest in possession. (*Vanderzee* v. *Slingerland, supra.*)

The interlocutory judgment and order and final judgment affirming such interlocutory judgment should be reversed and new trial granted, with costs to the appellants to abide the event, payable out of the estate of Mary J. Mason, deceased.

Parker, Ch. J., O'Brien, Bartlett, Haight, Vann and Landon, JJ., concur.

Judgment reversed, etc.