Joseph A. Oox, S.
This testatrix created a trust for the benefit of her sister and directed that upon the latter’s death one half of the trust principal be continued in secondary trust for the benefit of the sister’s son and the remaining one half of the trust principal be continued in secondary trust for the benefit of the sister’s daughter. The sister’s son, who survived both the testatrix and his mother, died in 1958 survived by a wife and an adopted daughter but by no issue of his blood. Accounting is now being had of the fund heretofore administered for the benefit of the son and the court is asked to determine the disposition that is required to be made of the remainder of this trust. The remainder disposition in the will reads as follows: “and upon the death of said children, respectively, [that is, Edward B. Rust and Josephine B. Rust, the children of Clarissa B. Rust] to pay the principal to their issue per stirpes, and should either child of my said sister die before her without leaving issue but having a husband or wife, him or her surviving, such husband or wife shall take the share of the one so dying; should either child of my said sister die without leaving issue or a husband or wife him or her surviving, the share of the one so dying shall go to the surviving child of my said sister or to Ms or her surviving issue or in default of issue to his or her surviving husband or wife.”
The primary issue concerns the status of the adopted daughter of the deceased income beneficiary. If the adoptee qualifies as issue of her foster father, she is entitled to the trust remainder. In Matter of Upjohn (304 N. Y. 366) the court reaffirmed the rule theretofore established by the holding in New York Life Ins. & Trust Co. v. Viele (161 N. Y. 11, 20) to the effect that this problem is to be approached on the assumption that a testator in referring to issue of a remainderman ordinarily does not intend to benefit an adopted child of the remainderman and that a contrary result is to be reached only if an affirmative intent to benefit an adopted child is found either in the language of the trust instrument or is evidenced by extraneous facts. In the Upjohn case the controlling facts were that the testator was aware of the adoption prior to the execution of his will and that the testator had evidenced an intention to benefit the adoptee both in his attitude toward the child in the testator’s lifetime and in the will itself. Other examples of the application of this rule of construction are found in Matter of Ward (9 A D 2d 950) where the finding was “ that the evidence abundantly establishes that the testatrix intended to benefit a *176 child adopted by her son ” and Matter of Day (10 A D 2d 220) where the trustor was aware of one adoption, which took place prior to the creation of the trust, and was found to have executed the trust instrument which, against this background, contained no explicit direction drawing distinction between natural grandchildren and adopted grandchildren and, by reason of such omission, permitted a second child, adopted long after the trustor’s death, to share in the trust estate.
In Matter of Fales (16 Misc 2d 106) this court followed the rationale of the Upjohn case, as well as Matter of Hilts (5 Misc 2d 862, affd. 4 A D 2d 1013), and excluded an adopted child when the testator had no knowledge of the adoption and the will disclosed no intent to benefit an adopted child. In the Fales case a further influential factor was the clear evidence of a testamentary intention to confine benefits to blood relatives of the testator but, with respect to this factor, the will at bar exhibits a wholly contrary purpose. Here the primary gift of the remainder was to the issue of the income beneficiary with a secondary gift to the spouse of the beneficiary in default of issue. There follow other substitutionary gifts, intended to take effect only in the event of the beneficiary’s death without either issue or a spouse, and included among the possibilities is a gift to the spouse of the income beneficiary’s sister. Certainly this testamentary plan did not have any purpose to keep the disposition within bloodlines when it envisaged ultimate possession, under varying contingencies, in either the wife of the income beneficiary or the husband of a stranger to the trust. The plan of the testatrix would seem to be one ,-to dispose of her money not only to her collateral relatives but to those who acquired an affinity to such relatives. It cannot be said that a remainderman who acquired a status through the marriage contract should have a stronger claim to the estate than a person acquiring a status through adoption and, when this testatrix attempted to place herself in the position of the income beneficiary and, in such position, to select those closest to him, it cannot be said that her intention was to include a spouse but to exclude a child by adoption. This court reads the will, against this background, as expressive of the necessary intention to meet the requirements of the prior decisions and, accordingly, holds that the adopted child is entitled to the trust remainder.
The foregoing conclusion renders any further construction of the will unnecessary and this is fortunate inasmuch as a serious problem is presented as to whether or not the will contains an effective disposition of the remainder if the adopted child were *177 to be eliminated as a remainderman. The text of the will conditions the substitutionary gifts, to persons other than issue, upon the death of the income beneficiary before the death of his mother and a strong argument could be made that this limitation, upon an event which did not in fact occur, results in an intestacy. The decisions in Matter of Slater (3 N Y 2d 109) and Matter of Englis (2 N Y 2d 395) are clear authority for strict interpretation of deficient testamentary language although the door has been left ajar by the recognition that Matter of Selner (261 App. Div. 618, aifd. 287 N. Y. 664) is still good law. In "the latter regard the Court of Appeals said “ There are, of course, situations where common sense and justice require that the courts correct situations resulting from obvious error or omissions in wills. Such was the Seiner case.” (Matter of Englis, supra, p. 402.)
The surviving wife of the income beneficiary asks that intestacy be avoided and that a construction be reached in her favor despite the problems presented by the draftsmanship of the will. In doing this the wife does not dispute the position of the adopted child and the wife makes her contention only as an alternative in the event the court should reject the claim of the adopted child. This expression of family harmony, not always existing in construction issues, is accepted by the court as moral support for the interpretation of the will which the court, on the precedent of the prior decisions, earlier reached in this opinion. Submit decree on notice construing the will and settling the account.